USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/11/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATHANIEL MAHONE,

Plaintiff,

-v-

CITY OF NEW YORK, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, DOCTORS JOHN DOE #1–10, M.D., and CORRECTION OFFICERS JOHN AND JANE DOE #1–10,

Defendants.

13 Civ. 8014 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Nathaniel Mahone, a former inmate at Riker's Island, sues the City of New York (the "City"), the New York City Health and Hospitals Corporation ("HHC"), and certain doctors and corrections officers employed by those entities, alleging that after he broke his leg in a fall on Riker's Island, defendants were deliberately indifferent to his medical needs and committed negligence and medical malpractice. Defendants move to dismiss. For the reasons that follow, that motion is granted in part and denied in part.

## I. Background[1]

### A. Factual Background

On June 23, 2011, at 10:30 a.m., Mahone, then in the custody of the New York City Department of Corrections ("DOC"), slipped on a patch of sand on a field on Riker's Island, fracturing his left fibula and tearing the ligaments in his left ankle. Am. Compl. ¶¶ 9–10, 33. He

[1] The Court assumes all facts pled in the Amended Complaint, Dkt. 21 ("Am. Compl.") to be true, drawing all reasonable inferences in the plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

was taken to a DOC medical center, where Drs. John Doe 1 and 2 examined him and told him that he should "stay off his foot," which might be fractured, and that he should see an orthopedic surgeon. *Id.* ¶ 11. The doctors dressed his foot in a splint and prescribed him pain medication. *Id.*

Between June 23 and June 27, 2011, Mahone repeatedly complained to the corrections officers on duty that he was in extreme pain and discomfort. *Id.* ¶ 12.

On June 27, 2011, corrections officers took Mahone to Bellevue Hospital, operated by HHC. *Id.* ¶ 13. Drs. John Doe 3 and 4 told Mahone that his foot was seriously fractured and required orthopedic surgery, for which he should return within a week. *Id.* ¶ 14. In the meantime, the doctors recommended that Mahone use a wheelchair and limit his walking. *Id.* Mahone stayed the night at Bellevue. *Id.* ¶¶ 13, 15.

On June 28, 2011, in the evening, Mahone returned to Riker's. *Id.* ¶ 15. DOC refused to provide him with a wheelchair. *Id.* ¶ 16. The Corrections Officers on duty did not assist him in retrieving his pain medication from the pharmacy, which is located in a building about 2,000 feet away from Mahone's cell. *Id.* As a result, Mahone had to retrieve his pain medication without assistance. *Id.*

Between June 28 and June 30, 2011, Mahone repeatedly complained to the corrections officers on duty of extreme pain. *Id.* ¶ 17. He also requested a wheelchair and treatment, but these, apparently, were not furnished to him. *Id.*

On June 30, 2011, Mahone was taken to the North Infirmary Command (NIC) at Riker's Island. *Id.* ¶ 18. There he was seen by Drs. John Doe 5 and 6,[2] who administered pain

[2] The Amended Complaint states that, on June 30, 2011, Mahone was seen at the NIC by Drs. John Doe 4–6. *Id.* ¶ 18. However, the Court infers that this is a typographical error, and that Mahone means to state that only Drs. John Doe 5 and 6 saw him at the NIC, as the Amended

medication and recommended that he elevate his leg. *Id.* ¶ 19. On July 3, 2011, at about 6:00 p.m., Mahone slipped on a wet bathroom floor, exacerbating his injuries. *Id.* ¶ 20.

On July 5, 2011, Mahone was taken to Bellevue Hospital. *Id.* ¶ 21. There he met Drs. John Doe 7 and 8, both orthopedic surgeons, who examined him and informed him about his upcoming surgery. *Id.*

On July 7, 2011, DOC provided Mahone with a wheelchair. *Id.* ¶ 22.

On July 8, 2011, Mahone was taken to Bellevue, where Drs. John Doe 7 and 8 performed orthopedic surgery on his left leg. *Id.* ¶ 23. They recommended that he stay in the hospital for three days to recover. *Id.* Mahone was also told that he would have a follow-up consultation with Drs. John Doe 7 and 8. *Id.* ¶ 24.

In the early morning of July 9, 2011, Mahone was taken back to Riker's Island. *Id.* ¶ 25. He complained of extreme pain and numbness in his lower leg and requested medical attention. *Id.* ¶ 26. At 8:00 a.m. that same morning, Mahone was taken to the urgent-care facility on Riker's Island. *Id.* ¶ 27. Drs. John Doe 9 and 10 examined Mahone and told him that some of his nerves might have been cut or otherwise damaged during the surgery. *Id.* They informed Mahone and corrections officers that Mahone might never regain sensation in his left leg and that, at best, it would be months before he regained feeling in his left leg. *Id.* ¶¶ 27–28. The doctors also told Mahone to keep his foot elevated. *Id.* Later, the corrections officers refused to provide Mahone with blankets or pillows to elevate his leg. *Id.* ¶ 29.

Mahone now suffers from permanent nerve damage to his leg, and his ability to move his entire lower body is impaired. *Id.* ¶ 66.

---

Complaint previously states that Dr. John Doe 4 saw Mahone at Bellevue Hospital on June 27, 2011. *Id.* ¶ 14.

**B.     Procedural Background**

On July 21, 2011, Mahone, through counsel, filed a Notice of Claim with the City.  *Id.* ¶ 30.  On August 22, 2011, the City acknowledged receipt of Mahone's Notice of Claim.  *Id.* ¶ 31.

An examination of Mahone pursuant to New York General Municipal Law § 50-h was then scheduled for September 21, 2011.  *See* Dkt. 22 Ex. A.  On September 14, 2011, Mahone entered into a stipulation with the City adjourning the examination, which, Mahone stated, he would be unable to attend, as a result of his incarceration.  *Id.*; Am. Compl. ¶ 32.

On April 12, 2013, Mahone was released from DOC custody.  Am. Compl. ¶ 33.

On May 14, 2013, Mahone initiated this lawsuit by filing the Complaint in United States District Court for the Eastern District of New York.  Dkt. 1.

On November 12, 2013, this case was transferred to this District on defendants' motion.  Dkt. 13.  On December 12, 2013, defendants moved to dismiss, Dkt. 17, and filed an accompanying memorandum of law, Dkt. 18 ("Def. Br.").  On December 24, 2013, Mahone's counsel emailed the Amended Complaint to defense counsel and the Court; he later filed it on the public docket.  Dkt. 21.  The Amended Complaint alleges that (1) defendants were deliberately indifferent to Mahone's medical needs, in violation of the Eighth Amendment of the U.S. Constitution and of Article I, § 5 of the New York State Constitution; (2) Corrections Officers John and Jane Doe 1–10 committed negligence by ignoring Mahone's requests for treatment, forcing Mahone to walk 2,000 feet to retrieve his pain medication, and denying Mahone pillows or blankets to elevate his foot; and (3) Drs. John Doe 1–10 committed medical malpractice by

failing to immediately treat his fracture and causing him permanent nerve damage during the surgery.[3]

On January 23, 2014, defendants informed the Court that they would rely on their previously filed motion to dismiss. Dkt. 20. In that motion, defendants argue that the Amended Complaint does not state a claim for deliberate indifference and, as to the municipal defendants, does not allege a policy, practice, or custom that violated Mahone's constitutional rights. They then argue that, if the federal claims are dismissed, the state law claims should be dismissed for lack of supplemental jurisdiction or as untimely. On February 11, 2014, Mahone filed a memorandum of law in opposition to the motion to dismiss. Dkt. 22 ("Pl. Br."). On February 20, 2014, defendants filed a reply affirmation in support of their motion to dismiss. Dkt. 26 ("Def. Reply Br."). In their reply, defendants argued, for the first time, that the New York constitutional claim should be dismissed because there is no cause of action for deliberate indifference to medical needs under the New York State Constitution.

---

[3] The Amended Complaint as written includes two separate federal causes of action. The first, brought against all defendants, is styled "Claims Pursuant to 42 U.S.C. § 1983"; it alleges that defendants deprived Mahone of life, liberty, and property in violation of the Fourteenth Amendment and § 1983. Am. Compl. ¶¶ 34–44. The second, brought against "DOC Defendants" (a term the Amended Complaint does not define), is styled "Infliction of Cruel and Unusual Punishment Against Violation of the Eighth Amendment"; it alleges that these defendants were deliberately indifferent to Mahone's medical needs, in violation of the Eighth Amendment, as incorporated against the states by the Fourteenth Amendment. *Id.* ¶¶ 45–55. The Court treats these as a single cause of action under § 1983, for deliberate indifference to Mahone's medical needs in violation of the Eighth Amendment, as incorporated against the states by the Fourteenth Amendment. The parties take a similar approach. *See* Def. Br. 4–11; Pl. Br. 5–11. A cause of action for deliberate indifference can alternatively be styled as a violation of due process, where the plaintiff is a pre-trial detainee; the analogous claim by a convicted defendant is brought under the Eighth Amendment. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). Here, based on the Amended Complaint, it is not certain whether, during the relevant time period, Mahone was a pre-trial detainee or a convicted inmate. *See* Def. Br. 4. Because the standards governing his treatment are identical regardless of which status Mahone occupied, this factual ambiguity (which should be resolved during discovery) has no bearing on the motion to dismiss.

## II.     Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.    Discussion

### A. Deliberate Indifference under the United States Constitution

The Second Circuit has clearly set forth the standard for a claim of deliberate indifference to medical needs:

> The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care. Yet not every lapse in medical care is a constitutional wrong.  Rather, a prison official violates the Eighth Amendment only when two requirements are met. The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. . . .  The second requirement . . . is subjective: the charged official must act with a sufficiently culpable state of mind.

*Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (citations omitted).

Defendants have conceded, for the sake of this motion to dismiss, that the Amended Complaint alleges a sufficiently serious injury. Def. Br. 5. The decisive question, therefore, is whether the Amended Complaint adequately alleges that defendants acted "with a sufficiently culpable state of mind," *i.e.*, "with deliberate indifference to inmate health," which is "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280.

**1. The Doctors**

The Amended Complaint fails to allege, in other than a conclusory manner, that any doctor defendants acted with deliberate indifference towards Mahone's health. Quite the contrary, the Amended Complaint's account of Mahone's extensive treatment at the hands of a large number of medical professionals is consistent with the conclusion that these doctors acted diligently and in good faith.

Mahone, however, argues that it was not the doctors' acts, but their omissions, that constituted deliberate indifference to his medical needs: He asserts that the doctors had a duty to ensure that he was able to adequately follow the course of treatment they had prescribed, and they failed to fulfill that duty, inasmuch as Mahone was not put in position where he could stay off his foot, and could not promptly gain access to a wheelchair, or acquire blankets and pillows to elevate his leg.[4] Pl. Br. 7–10. But Mahone does not cite any case law supporting the unlikely proposition that a doctor treating a prison inmate has a duty to assure that prison personnel facilitate compliance with the course of treatment he or she recommends, such that the prison's

[4] Mahone also appears to argue, albeit half-heartedly, that Drs. John Doe 7 and 8, who performed his surgery, exhibited deliberate indifference by damaging Mahone's nerves. Pl. Br. 9. But "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

failure to facilitate such compliance permits the imputation to the doctor of a culpable state of mind. *See Estelle*, 429 U.S. at 105-06 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'") (citations omitted); *Salahuddin*, 467 F.3d at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."). Nor does Mahone allege facts that would permit the conclusion that the doctors here took on the responsibility of assuring that prison personnel facilitated compliance with the course of treatment they had recommended. The Amended Complaint does not allege, for example, that medical instructions are regularly flouted by corrections officers at Riker's Island, in a manner known to the defendant doctors, such that a doctor could be charged with the knowledge that Mahone would not receive the treatment he or she had prescribed. Nor does it allege that the corrections officers informed the doctors of their intention to flout the doctors' instructions. Without factual allegations along these lines, the Amended Complaint does not allege facts that would allow a factfinder to infer that the doctors acted with deliberate indifference towards Mahone's ability to comply with their prescriptions. Instead, on the facts alleged, a factfinder would be compelled to conclude that the doctors here acted as doctors ordinarily do—prescribing treatment and leaving it to the patient, or the patient's guardians, to ensure that the course of treatment be carried out. Indeed, the Amended Complaint does not even make out a claim of negligence against these doctors. It does not ever allege, for example, what a reasonably prudent doctor would have done differently.

The Amended Complaint also alleges that the doctors acted with deliberate indifference because they failed to treat his fracture immediately. Am. Compl. ¶¶ 49–53; *id.* ¶ 49 (Mahone "was not treated for [his] injuries until July 2011, almost a month after his injuries occurred.").

But the Amended Complaint's account of Mahone's treatment belies this allegation. On June 23, 2011, the day Mahone broke his leg, he was taken to see Drs. John Doe 1 and 2, who splinted his foot and prescribed pain medication. *Id.* ¶ 11. Mahone then had three doctor's appointments before his surgery on July 8, 2011, two weeks and a day after his fall. *Id.* ¶¶ 13–14, 19, 21, 23. In sum, according to his own allegations, Mahone appears to have been treated promptly and repeatedly. Furthermore, even if the 15-day period between injury and surgery fell below the ordinary standard of care, *id.* ¶ 83, that modest lapse, pertaining to a non-emergent medical issue, is not itself a sufficient basis to infer that the doctors acted with deliberate indifference to Mahone's medical needs. *See Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (table) (2d Cir. 1999) ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years.") (citations omitted).

The Amended Complaint thus fails to state a claim for deliberate indifference against the defendant doctors. The motion to dismiss the claims against these doctors is, therefore, granted.

**2. The Corrections Officers**

The Amended Complaint does, however, adequately allege deliberate indifference by one or more corrections officers.[5] The Amended Complaint alleges that, after Mahone fractured his left fibula and tore the ligaments in his left ankle, corrections officers refused to timely provide him with a wheelchair or assist him in retrieving his pain medication from the pharmacy, which

[5] Unlike its designation of the defendant doctors by particular John and Jane Doe numbers, the Amended Complaint does not describe the corrections officers in question by unique identifiers. Accordingly, the Court cannot tell at this time whether the Amended Complaint states a claim against just one or more than one Doe officers.

was 2,000 feet away, forcing Mahone, who had severe leg injuries, to walk a distance equivalent to more than six football fields to retrieve his prescription pain medication. *Id.* ¶ 16. These allegations are sufficient to make out a claim of deliberate indifference, at least by those correction officers aware of Mahone's medical situation and needs, to the severe pain and potentially long-lasting injury these acts would cause Mahone.

To be sure, defendants vigorously dispute the Amended Complaint's characterization of the facts. They describe the course of events, as relevant to the corrections officers, as follows:

> After he injured his leg, plaintiff was advised it was broken and might require surgery. He was then given pain medication, his leg was splinted, he was advised not to bear weight on it, and he was scheduled to see a specialist. Plaintiff then was taken to see the specialist, who scheduled surgery and recommended restricted walking. Plaintiff was then placed in special housing for medically compromised inmates so that he would not have to travel for treatment. When the specialist also recommended that plaintiff be provided with a wheelchair, plaintiff was provided with a wheelchair. Although there was allegedly a delay by the DOC of nine days in providing the wheelchair, plaintiff was housed in the NIC for all but one of those days. Further, as plaintiff acknowledges, he received pain medication the entire time, his foot was splinted, and he had crutches.

Def. Reply Br. ¶ 6. If this characterization of events is established in discovery without contradiction, it may suffice to support a motion for summary judgment in favor of defendants. But, at this initial stage, the allegations in the Amended Complaint must be taken as true. Thus, while defendants insist that they gave Mahone crutches in the period before he was given a wheelchair, mitigating the wheelchair's absence, *id.*, the Court cannot consider this representation in deciding a motion to dismiss.

Further, that the alleged delay in providing Mahone with a wheelchair lasted only one or two days before Mahone was taken to the NIC does not necessarily defeat Mahone's claim of deliberate indifference. Mahone alleges that, during the period when he was denied a wheelchair, he was knowingly forced to walk 2,000 feet to retrieve his medicine, and the claim

of this directive by prison officials, even if it lasted only for one to two days, satisfactorily alleges an "'unnecessary and wanton infliction of pain'" that is by itself enough to constitute deliberate indifference. *See Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *id.* at 104–05 (deliberate indifference can be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"); *Archer v. Dutcher*, 733 F.2d 14, 16 (2d Cir. 1984) ("[I]f defendants did decide to delay emergency medical aid—even for 'only' five hours—in order to make Archer suffer, surely a claim would be stated under *Estelle.*").

The Amended Complaint therefore states a claim for deliberate indifference against the corrections officers. The motion to dismiss such a claim against these officers is, therefore, denied.

**3. The City and HHC**

The Amended Complaint also alleges that the City and HHC acted with deliberate indifference to Mahone's medical needs. Section 1983 provides a cause of action against local governments such as the City and HHC when the allegedly unconstitutional action is pursuant to a policy, practice, or custom of the local government, thereby making it attributable to the local government and not merely to the individual person who took the action in question. *See Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690–91 (1978). "Although this rule does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (citations omitted).

The only allegations in the Amended Complaint, however, that are potentially relevant to a deliberate indifference claim against the City and HHC are those concerning the doctors and corrections officers, discussed *supra*, Sections III.A.1 & III.A.2.  The Court has already held that the Amended Complaint does not support a claim that the doctors acted with deliberate indifference to Mahone's medical needs; their actions cannot support the existence of a policy constituting deliberate indifference.  That leaves only the two instances of alleged deliberate indifference by the corrections officers, in which they initially refused Mahone a wheelchair and made him walk to get his medication, and in which they refused to supply him with extra pillows and blankets to elevate his leg.  These allegations fall short of showing a "pattern of misconduct" necessary to support an inference that either the City or HHC has a policy, practice, or custom of behaving with deliberate indifference to the needs of inmates like Mahone.  *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("Specifically, *Monell*'s policy or custom requirement is satisfied where a local government is faced with a *pattern* of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.") (emphasis added).  Indeed, Mahone does not even state, with any specificity, what the alleged unconstitutional policy *is*.  *See* Pl. Br. 11 (stating only that "pursuant to the statewide prison policy that existed and was used consistently by Defendant Corrections Officers at each respective instance, Defendants violated Plaintiff's constitutional rights").

The Amended Complaint fails to state a claim against the City or HHC.  The motion to dismiss the federal claims against those defendants is, therefore, granted.

**B. Deliberate Indifference under the New York Constitution**

Mahone also brings a claim for deliberate indifference to his medical needs under the New York Constitution. New York law recognizes such a claim when no alternative remedy exists. *See Thomas v.* State, 814 N.Y.S. 2d 565 (Table), 2005 WL 3681655, at *3 (Ct. Cl. 2005); *De La Rosa v. State*, 662 N.Y.S.2d 921, 924 (Ct. Cl. 1997)). But here, an alternative remedy does exist, and "'[d]istrict courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983.'" *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (Engelmayer, J.) (quoting *Campbell v. City of N.Y.*, No. 09 –CV–3306 (FB)(JO), 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011)); *accord Waxter v. State*, 826 N.Y.S.2d 753, 754 (3rd Dep't 2006) ("[A] private right of action for a violation of the [New York] Constitution is unavailable where an alternative remedy . . . exists.") The factual allegations underlying the federal and New York constitutional claims appear identical, and Mahone has not argued that his New York deliberate indifference claim seeks remedies that are unavailable under § 1983. The Amended Complaint therefore fails to state a claim for deliberate indifference to medical needs under the New York Constitution, and that claim is dismissed.

**C. Timeliness of the Negligence and Medical Malpractice Claims**

Defendants argue that Mahone's state-law claims for negligence and medical malpractice are untimely because they were not brought within the statute of limitations of "one year and ninety days after the happening of the event upon which the claim is based." N.Y. General Municipal Law § 50–i; Def. Br. 12–13. Mahone does not dispute that the applicable statute of limitations is one year and 90 days; that it began to run on July 9, 2011; or that, absent any tolling, it expired on October 9, 2012, well before the filing of the Complaint on May 14, 2013.

*See* Pl. Br. 13; Def. Br. 12–13; Am. Compl. ¶ 27; Dkt. 1. Instead, Mahone asserts that he signed a stipulation with the City and HHC which tolled the statute of limitations. Pl. Br. 13; *id.* Ex. A (the "Stipulation"). Defendants dispute that the Stipulation had such effect. They argue that the Stipulation addressed a different issue, involving tolling the deadline for the City to conduct a "50-h examination" of the claimant within 90 days of the filing of a notice of claim. Def. Reply. Br. ¶ 13. Defendants are correct.[6]

By way of background, New York law requires that a potential plaintiff file a notice of claim before suing a municipality in tort. *See* N.Y. General Municipal Law § 50-i ("No action or special proceeding shall be prosecuted or maintained against a city . . . for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city . . . or of any officer, agent or employee thereof . . . unless . . . a notice of claim shall have been made and served upon the city . . . in compliance with section fifty-e of this article."). The municipality then has a right to demand a "50-h examination" of the claimant within 90 days. *See* N.Y. General Municipal Law § 50-h ("Wherever a notice of claim is filed against a city . . . the city . . . shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made."). General Municipal Law § 50-h(5) "forbids a plaintiff from filing an action prior to being examined in a § 50-h hearing, if the plaintiff adjourns the scheduled § 50–h hearing date." *Allan v. City of New York*, 386 F. Supp. 2d 542, 548 (S.D.N.Y. 2005).

[6] On its face, the Stipulation is between Mahone and the City—HHC and the individual defendants are not explicitly made parties to it. Mahone, however, asserts that the Stipulation also binds HHC. *See* Pl. Br. 13. Because the Court holds that the Stipulation does not toll the statute of limitations, it need not decide which defendants would be bound by such tolling. Defendants separately dispute the authenticity of the Stipulation, noting that the copy of the Stipulation that Mahone submitted as an exhibit to his brief is signed only by his attorney, not by any counterparty. The Court has no occasion to resolve the authenticity of the Stipulation.

Mahone filed his Notice of Claim with the City on July 21, 2011. Am. Compl. ¶ 30. On September 14, 2011, Mahone and the City entered into the Stipulation. The Stipulation states that Mahone's 50-h examination "currently scheduled for [September 21, 2011] is hereby adjourned at the claimant's request. In particular, the claimant alleges that he/she is unable to attend the hearing due to Incarcerated."[7] Stipulation ¶ 1. The Stipulation recites that Mahone shall be responsible for notifying the City once he is available to be examined. *Id.* ¶ 2. Important here, the Stipulation explicitly recites that Mahone "may commence an action against the City on the above claim within the applicable statute of limitations prior to the City conducting a hearing or physical examination of claimant pursuant to 50-h." *Id.* ¶ 3. The Stipulation provides that if Mahone files a lawsuit, all deadlines would be effectively stayed pending completion of the 50-h examination. *Id.* ¶ 4. Finally, the Stipulation states that "[n]othing herein shall be construed as a waiver of the City's rights pursuant to 50-h." *Id.* ¶ 6.

Mahone does not specify which portion of the Stipulation, in his view, tolled the statute of limitations. Instead, he simply asserts that the parties "stipulated to allow Plaintiff to appear for 50(h) hearings and further prosecute the instant action upon his release." Pl. Br. 13. But nothing in the Stipulation states that it tolls the statute of limitations. Quite the opposite, the Stipulation explicitly provides that, contrary to usual procedure, Mahone could bring suit against the City before he sat for his 50-h examination; his suit would just be in effect stayed pending his 50-h examination. Stipulation ¶ 3. Accordingly, there would be no reason for the Stipulation to

[7] The Stipulation appears to be a form—it is mostly typed, with a few details, such as the reason for the adjournment, filled in by hand.

toll the statute of limitations, because Mahone was free to bring suit immediately. Mahone's tolling argument thus lacks support in either text or purpose.[8]

The Amended Complaint's state-law claims of negligence and medical malpractice claims are therefore untimely. The motion to dismiss those claims is, therefore, granted.

### D. Supplemental Jurisdiction

Defendants urge this Court to decline to exercise supplemental jurisdiction over Mahone's state law claims. The Court has dismissed Mahone's state law claims; accordingly, there are no claims over which it could exercise supplemental jurisdiction.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. The federal deliberate indifference claim is dismissed as against the doctors, the City, and HHC, for failure to state a claim. The state deliberate indifference claim is dismissed as duplicative of the federal deliberate indifference claim. The negligence and medical malpractice claims are dismissed as untimely. The one claim that remains is the federal deliberate indifference claim against one or more corrections officers. This case will now proceed to discovery on the merits of that claims. The Court will issue a separate order today concerning the next steps in the management of this case.

---

[8] This conclusion is fortified by the New York courts' strict enforcement of the statute of limitations contained in § 50-i. *See, e.g.*, *Cinqumani v. Cnty. of Nassau*, 814 N.Y.S.2d 663, 665 (2d Dep't 2006) ("General Municipal Law § 50–i(3) provides that 'nothing contained herein or in section fifty-h of this chapter shall operate to extend' the one year and 90–day statute of limitations. Accordingly, General Municipal Law § 50–h, which provides that when a municipality demands an examination no action shall be commenced until the plaintiff complies, does not toll the statute of limitations.") (citing *Baez v. New York City Health & Hosps. Corp.*, 80 N.Y.2d 571, 577 (1992)).

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 10, 2014
New York, New York